## CLARK BROTHERS COAL MINING COMPANY, PLAINTIFF-RESPONDENT, v. ROYAL MANUFACTURING COMPANY, DEFENDANT-APPELLANT.

Argued March 15, 1915—Decided March 15, 1915.

On appeal from the Supreme Court, in which the following *per curiam* was filed:

"The plaintiff and defendant entered into a written contract by which the plaintiff agreed to sell and the defendant 'to buy up to one thousand tons of Falcon bituminous coal for one year, beginning September 8th, 1911, and ending September 8th, 1912,' subject to certain conditions, one of which was that if at any time during the contract there should be a shortage of cars, shipments should be prorated from time to time in fair proportion to all orders or contracts which the seller then had outstanding, and also that the coal 'must be shipped the purchaser in as nearly equal monthly quantities as possible.' Therefore under this contract the plaintiff was bound to ship the purchaser as nearly as possible eighty-three and thirty-three hundredths tons per month. The shipments began in November of 1911, and by March 1st there had been delivered three hundred and forty-two tons, or an average of about eighty-five tons a month. The defendant, being short of coal, on February 7th, 1912, ordered a carload to be shipped, and on the same day ordered that one carload a week be shipped until further notice; and on the 23d of the same month an urgent telegram was sent to the plaintiff to ship more coal. About one hundred and eighty-five tons were shipped during February and about one hundred and one tons during March. On March 18th, 1912, the defendant ordered coal elsewhere. The plaintiff brought suit for the coal shipped in January, February and March, which amounted to $382.54, and the defendant filed a recoupment asking an allowance for the difference between the price paid for coal bought elsewhere and the contract price with the plaintiff, which exceeded, to the extent of $51, the amount due the plaintiff for coal received.

"Now, on the trial there was evidence tending to show that during the time when the shipments were not kept up to the contract there was a car shortage, and that the plaintiff prorated shipments between the defendant and its other customers. The case was submitted to a jury and the plaintiff had judgment for its full claim, from which the defendant appeals.

"It is first urged that the court was in error in refusing to direct a verdict for the defendant to the extent which the amount sought to be recouped exceeded the contract price. But we have pointed out that there was evidence that there was a car shortage, and the jury might well find from this evidence that it was because of this that the plaintiff was not able to ship the coal in equal monthly quantities, which was a condition the contract provided for.

"Then again it is claimed by the defendant that owing to some correspondence the contract was modified. We do not think that the evidence bearing upon the alleged modification was such as to present a court question as to modification, so there was no error in refusing to direct a verdict for the defendant.

"The second point is that the court refused to allow the defendant to close the case to the jury. We think there was no error in this, because, although the defendant admitted that the coal sued for had been delivered and received by the defendant, the burden still remained upon the plaintiff to show that it shipped the coal in accordance with the contract which it was seeking to enforce.

"The third point is that the court erred in charging, as requested by the plaintiff, that under the contract the company was not obliged to deliver more than eighty-three and thirty-three hundredths tons each month, while the contract was in force, and after it had delivered enough coal to make the monthly average, there was no breach of the contract by failure to make more deliveries than the monthly average called for by the contract. The defendant now complains that this was misleading, because after the defendant had purchased extra coal, several cars were shipped by the plaintiff from March 18th to 27th, inclusive, aggregating over one hundred tons. We think that is not a fair criticism of the charge. The court told the jury that the plaintiff was not obliged to deliver more than eighty-three and thirty-three hundredths tons each month, and that after it had delivered enough coal to make a monthly average, it did not commit a breach by failure to do more 'so long as the monthly average of eighty-three

and thirty-three hundredths tons was maintained during the existence' of the contract;' and taken all together, we think the fair interpretation is that the plaintiff was required to deliver the monthly average, and then the court instructed the jury that this was so, unless there was a modification by the order and correspondence put in evidence.

"The judgment will be affirmed, with costs."

For the appellant, *McDermott & Enright.*

For the respondent, *McCarter & English.*

PER CURIAM.

The judgment under review will be affirmed, for the reasons set forth in the opinion of the Supreme Court.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, PARKER, MINTURN, KALISCH, BLACK, VREDENBURGH, WHITE, TERHUNE, HEPPENHEIMER, WILLIAMS, JJ. 13.

*For reversal*—None.